State vs. Swadley.

---

## STATE vs. SWADLEY.

1. An indictment on the 33d section of the act concerning slaves, (Rev. Stat. 1018) charging the sale of one pint of whisky, "without then and there having a written permit from the owner, overseer of said slave, or any one having legal authority over said slave, authorizing said sale," is sufficient. "Written permit" to do the act may be equivalent to the "consent in writing," and the want of such consent from the "owner, overseer of the slave, or any one having legal authority over said slave," may be equivalent to the terms, want of consent of the "master, owner or overseer of such slave."

HENDRICK, for plaintiff in error.

1. The indictment is bad, because it is uncertain whether it is found upon the 7th section of the "act to regulate groceries and dramshops" or upon the 33d section of the 1st article of the "act concerning slaves." The indictment not using the characteristic language of either of said acts, but in part using the language of each so as to render it uncertain which act is charged to have been violated, and precludes the defendant from pleading his conviction in bar to another indictment for the same offence specifically charged.

2. The indictment is bad because it does not negative permission or consent from the master of the slave. The statute makes a distinction between the master, the owner and the overseer. It is not sufficient therefore to negative permission of the owner and overseer without also negativing permission from the master who may in the contemplation of the statute be a different person from either the owner or overseer. Nor is it helped by the clause "or any other person having legal authority &c." That might still be true and the permission from the master not be negatived, as he might not have the legal authority referred to, and without such negation the indictment is bad.

For these reasons the judgment of the circuit court ought to be reversed.

GARDENHIRE, Attorney General, for the State.

1. The indictment was not found on the 7th section of the act to regulate groceries and dram-shops. That section relates alone to selling intoxicating liquor, by a grocer or dram-shop keeper, and the indictment charges a selling in neither of these characters: Frazer vs. State, 6 Mo. R. 195.

2. The indictment was found on the 33d section of the act concerning slaves, and the phrase in it which negatives written authority, from "any one having legal authority over said slave, authorizing said sale," is certainly as good in substance as to have expressly negatived such authority from the master. The negation in the indictment is more extensive than that contended for, and necessarily includes it.

RYLAND, J., delivered the opinion of the court.

Mark Swadley was indicted by the grand jury of Greene county at the December term of the circuit court in the year 1850, for selling liquor to a slave without having the consent in writing of the owner, overseer &c. of said slave.

The defendant appeared at the April term 1851, and moved the court to quash the indictment, which motion was overruled. He thereupon plead guilty. The court assessed his fine to twenty dollars and entered judgment therefor. The defendant afterwards moved in arrest of judgment, upon the grounds of defectiveness and insufficiency of the indictment, this motion was overruled, excepted to, bill of exceptions filed, and the case is now brought before us by writ of error.

The indictment charges that the defendant "did then and there unlawfully sell to a negro man, a slave whose name is unknown to the grand jurors, he, the said slave, then and there being the property of one Burrel Tisdel, one pint of whisky of the value of ten cents, without then and there having a written permit from the owner, overseer of said slave or any one having legal authority over said slave authorizing said sale; contrary &c."

The statute concerning slaves, sec. 33, Digest 1845, declares that "any person who shall buy of, sell to, or receive from any slave any commodity whatsoever, without the consent in writing of the master, owner or overseer of such slave first had and obtained &c.

The statute concerning groceries and dram-shops, sec. 7 Digest 1845, declares that "no grocer or dram-shop-keeper shall directly or indirectly sell any intoxicating liquor or drink of any kind to any slave, without permission in writing from the master, owner or overseer of such slave."

The defendant objects to the indictment in this case, because he cannot tell under which of these statutes it is found. There can be no pretence that it is founded on the 7th section of the act concerning grocers and dram-shops. It is no where averred that the defendant was a grocer or a dram-shop-keeper.

If the indictment can be supported at all, it must be under the 33d section of the act concerning slaves. The indictment is drawn very carelessly; but yet I am inclined to think it is good. The averment, that the defendant sold a pint of whisky to the negro man a slave, the property of Burrel Tisdel without the written permit of the owner, overseer of said slave, or any one having legal authority over said slave" will probably satisfy the statute in this case, "written permit" to do the

State vs. Swadley.

act may be equivalent to the "consent in writing" and the want of such consent from the "owner, overseer of the slave" or "any one having legal authority over said slave" may be equivalent to the terms want of consent of the "master, owner or overseer of such slave."

The sale of whisky to our servants is a serious evil, one that has merited the interference of the legislature; and I am not anxious to suffer the violators of their enactment in this behalf to escape the merited punishment by being over technical in supporting objections to indict-ments under these statutes.

The case of Markley vs. The State X. Mo. 291, is not like the one now before us. There the indictment was clearly bad; it alleged that the slave with whom the dealing was had belonged to one Fountain Edwards, that the dealing was done without the written permission of said Edwards, *non constat*, but that the overseer or master may have given their consent in writing. There the negation as to consent or permission related to one of the three persons, here it goes to all "owner, overseer of the slave or any one having legal authority over said slave."

Upon the whole I am in favor of affirming the judgment; and the other judges concurring, the judgment below is affirmed.